## CARTER BROS. & CO. v. W. H. BUSH.
### No. 3220.

1. **Garnishment—Assignment.**—A merchant made an assignment for the benefit of certain creditors, the surplus, if any, to be returned to the maker of the assignment. Other creditors brought suit upon their claims and procured writs of garnishment against the assignee. The garnishee answered, claiming that the assets, merchandise, notes, and accounts were not of value in excess of the claims secured. The plaintiffs contested the answer. The case being called, the plaintiffs requested that it be postponed as to the question of garnishment until the garnishee had executed his trust. This was denied and the parties proceeded to trial. *Held:*

1. The court erred in refusing to postpone the garnishment proceedings until after the execution of the trust.

2. But as the plaintiffs went to trial without objection, on appeal they are not entitled to favor.

3. The interest being large and there being a probability of a surplus after paying those secured in the trust, the judgment is reversed for the error in not postponing the case. The case should be postponed until the trust shall have been fully executed, when the garnishee should be required to make a supplemental answer showing the condition of the estate, etc.

2. **Choses in Action.**—Choses in action can not be reached by garnishing the holder of them.

3. **Attorney Fees.**—It was not error in the trial judge allowing $100 to the garnishee as attorney fees.

APPEAL from Hunt. Tried below before Hon. E. W. Terhune. The opinion gives a statement.

*Montrose & Toombs,* for appellants.— 1. If a trustee or mortgagee holds possession of property delivered to him by a debtor for the purpose of paying his debts, the residue to be returned to the debtor after his debts are paid, and the trustee or mortgagee sells the property under a power, and there is a surplus in his hands after paying the debts secured, such surplus may be reached by garnishment. Jones on Pledges, sec. 373; 8 Am. and Eng. Encyc. of Law, pp. 1187, 1188, 1165, and note; Baldwin v. Tucker, 1 Pick., 389; Drake on Att., sec. 539.

2. Goods and chattels pledged, assigned, or mortgaged as security for any debt may be levied on and sold under execution against the party making the pledge, assignment, or mortgage, subject thereto; and when it appears from the garnishee's answer or otherwise that the garnishee has in his possession, or had when the writ was served, any effects of the defendant subject to execution, the court should not discharge him. Rev. Stats., arts. 2296, 205, 206; Drake on Att., sec. 539.

*B. F. Looney,* for appellee.—The answer of the garnishee and the proof adduced on the trial shows that the value of the assets in the hands of appellee was considerably less than the amount of the secured debts; and the answer of the garnishee being full and responsive to all the legal re-

quirements, and showing that on an administration of the said trust that there would remain no surplus, he was entitled to be discharged. Rev. Stats., art. 193; Waples on Att., pp. 213–215; Drake on Att., sec. 511.

GAINES, ASSOCIATE JUSTICE.—O'Neal & Evans, partners engaged in mercantile business, being unable to meet their obligations, transferred their assets, which consisted of goods and other personal property and credits, to the appellee; the goods to be sold and the credits to be collected so far as necessary for the payment of certain of their creditors. The conveyances stipulated that after the payment of the secured creditors the remainder of the assets should be returned to them. As to the goods the instrument 'is a chattel mortgage, and as to the notes and accounts, they are in the nature of a pledge. Appellants being creditors of the firm, and not secured by the transfer, brought suit upon their demand and caused a writ of garnishment to issue and to be served upon the appellee. Appellee answered, denying any indebtedness to the defendants, O'Neal & Evans, and that he had any effects of theirs in his hands except the goods, other personal property, and credits above mentioned, and alleging that they were held under the written transfer to which we have referred. He also answered, in substance, that the debts secured by those instruments amounted to the sum of $45,990.62; that the goods, etc., although they were invoiced at the time he took possession as of the value in the aggregate of $49,795.20, were in fact worth not more than one-half or two-thirds of that sum; and that the notes and accounts, amounting to $12,331.52 of full value, were not worth more than $33\frac{1}{3}$ cents on the dollar. He admitted having received $8000 in cash from the sale of the goods before the invoice was completed, and which, as we understand it, was not embraced in that invoice.

· The plaintiffs filed a pleading contesting the answer of the garnishee, alleging, in substance, that the property in the hands of the garnishee was sufficient to pay the secured debts, if properly administered, and to leave a sufficient surplus to discharge their own claim; and prayed that the case be continued until the trust should be fully administered and that the garnishee should then be required to answer as to any surplus that might remain after the payment of the debts secured by the mortgages.

The plaintiffs having obtained a judgment against the defendant in the principal suit, the cause, without objection from either party, proceeded to trial upon the issues made by the answer and the contest. The court, after hearing the evidence, determined that the assets in the hands of the garnishee were not more than sufficient to pay the debts secured by it, and entered judgment dismissing the garnishee with his costs, including $100 as his attorney fee.

The case presents a novel question of practice, which we have found it difficult to determine. The point is not made that the surplus of the

mortgaged property could not be reached by the process of garnishment. If it had been, ample authority could have been found to the contrary. But while there are many cases in the courts of other States with statutes similar to ours, in which it has been held that the trustee or mortgagee in possession of mortgaged chattels is answerable in garnishment to the creditor of the mortgagor to the extent of the latter's interest, we have found no case in which the practice as to the time and mode of arriving at that interest is discussed. The correct practice, however, is indicated in Moody v. Carroll, 71 Texas, 148, though the point was not necessarily involved in the decision in that case. Our statutes contain no express provision as to the procedure in a case like the present. It is, however, provided that "should it appear by the garnishee's answer or otherwise that the garnishee has in his possession, or had when the writ was served, any effects of the defendant liable to execution, the court shall render a decree requiring the garnishee to deliver up to the sheriff or any constable presenting an execution in favor of the plaintiff against the defendant such effects or so much of them as may be necessary to satisfy such execution." Rev. Stats., art. 206. But the garnishee can not be placed under an obligation more onerous than that he owes to the defendant, and therefore when he holds the property for the satisfaction of a lien he can not be required to deliver it to the sheriff or constable until the lien is satisfied. It follows that the statute is not strictly applicable.

There being no express provision as to the procedure in cases like the present, it is fair to presume that the Legislature intended that that practice should be adopted which was most expedient and best calculated to meet the ends of justice. But three modes of procedure suggest themselves as being at all practicable. First, to try the issue as to any alleged excess in the value of the property over the amount secured, and to give judgment for or against the garnishee as the question may be determined. Such was the course pursued by the court below. This appears to us objectionable, for the reason that the value which the garnishee may realize from the property in his hands must in most instances be speculative and uncertain, and any determination as to its amount may lead to a judgment which would result in injustice either to the one party or to the other. For example, if the court should find upon evidence apparently satisfactory that the property is not more than sufficient to pay the secured debts, and should discharge the garnishee, and if it should result that after the debts have been paid a surplus remains, the plaintiff is deprived of a means of satisfying his claim to which he is justly entitled. On the other hand, if the court should find that a surplus will exist, and should give judgment against the garnishee, he suffers a loss should the result be that after the payment of the secured debts no property or money is left. The garnishee can not be subjected to the danger of such a loss. The statute quoted provides that the judgment shall be that the gar-

nishee shall deliver the effects found subject to the writ to the sheriff or constable presenting an execution in favor of the plaintiff against the defendant; but in a case like the present that judgment can not be rendered, for the reason that he is entitled to retain possession of the property until the debts which are a charge upon it have been paid. To give a judgment against him for money would be to subject him to a liability different from that assumed by his contract with the defendant. Should the judgment be that he deliver the surplus to the sheriff after the payment of the debts, the real question in the case would be left for future determination and the trial would amount to nothing.

The second mode of procedure which has suggested itself to our minds is to give judgment upon the answer for the delivery of whatever effects may remain after the debts are paid. The objection to this practice is that it would merely fix the rights of the parties and would leave the judgment to be enforced by a new suit against the garnishee to determine the extent of his liability in case he should fail to comply with the order of the court. Since the judgment could not designate specifically the articles to be delivered, it is probable that a contention would frequently arise as to what effects remained after the lien had been discharged. The litigation should be finally disposed of in the garnishment proceeding, if possible.

These considerations lead us to conclude that the third course of procedure which has suggested itself to us is the proper practice—that is, to delay the proceeding until the garnishee has fully executed his trust and then to require of him a supplemental answer. Then any property in his hands could be adjudged to be delivered according to the statute, and any money that he might have resulting from sales made in pursuance of the trust could be subjected to the payment of the plaintiff's debt. There would be but one trial, if any at all, and that would arise upon a contest by the plaintiff of the supplemental answer. Such was the action prayed for in this case in the plaintiffs' contest of the garnishee's answer, and such should have been the action of the court.

The plaintiffs, however, voluntarily went to trial upon the issue, and for that reason their complaint here is not entitled to favor. But without saying that the judge's conclusions of fact are not warranted by the evidence and should not be deemed conclusive if the issues had been presented for trial at the proper stage of the proceedings, we think that in view of the large amount of the assets in the hands of the garnishee and the uncertainty attending an attempt to ascertain their value, there is a a possibility that a surplus of property may remain after satisfying the secured debts, and that the plaintiffs should not have been precluded of their right to reach such surplus, should it actually exist after the administration of the trust.

The case differs from that of Moody v. Carroll, above cited. In that

case the judgment was affirmed expressly upon the ground that the object of the appeal was not to secure a delay of the case until the trust had been executed.   We conclude that notwithstanding the fact that the plaintiff did not object to going into the trial, the case should have been delayed until the debts secured by the chattel mortgages had been paid, and that the judgment is erroneous.

We do not wish to be understood as holding that the choses in action in the hands of the appellee are subject to garnishment.   It is settled that they are not.   White Sewing Mach. Co. v. Atkeson, 75 Texas, 330, and cases cited.   But any money collected by the trustee on the notes and accounts after the payment of the secured debts would be subject to the writ.

If the judgment had been in other respects correct there would have been no error in allowing the garnishee an attorney fee of $100 as part of the costs.   Johnson v. Blanks, 68 Texas, 495; Moody v. Carroll, *supra.*

Should the garnishee fail after he has fully executed his trust under the mortgages to file a supplemental answer, he should be required to do so by the court upon motion by the plaintiff.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*