PAUL J. MEDLEY v. AMERICAN RADIATOR COMPANY ET AL.

Decided December 17, 1901.

I.—Contracts—Indivisible Nature—Payments in Installments.

A provision in a building contract for payments in installments as the work progresses does not affect the entire and indivisible nature of the contract, and such payments are not an acceptance of the work pro tanto and acquittance of the contractor to that extent.

2.—Garnishment—Uncompleted Contract.

Money to become due on an entire but uncompleted building contract is not subject to garnishment.

3.—Same—Answer of Garnishee.

Where the answer of a garnishee set up a building contract with the debtor, entire in its nature and still uncompleted, but providing for payments as the work progressed, and further set up that the amount which the garnishee had paid the contractor was less than the estimated value of the work done, this was not equivalent to an answer that the per cent of the value not covered by the payment had then accrued as a debt against the garnishee, since he did not then owe the unpaid balance of the estimated value, and even had a certain in-

terest in the sums already paid in the event the work was abandoned and he had to finish the contract.

**4.—Cases Reviewed.**

McClellan v. Routh, 15 Texas Civil Appeals, 344; Carter v. Bush, 79 Texas, 31, and Mensing v. Engelke, 67 Texas, 537, reviewed and distinguished.

**5.—Garnishment—Lien Extends to What Date.**

The garnishment lien attaches only to such liability as had accrued at the date of service of the writ or accrued between such service and the date named for the answer, and the operation of the writ is not extended by virtue of a request of the garnishee for time in which to file an amended answer.

**6.—Same.**

Where by virtue of a garnishment a creditor asserts a lien on funds not subject thereto other creditors who have acquired rights in such funds may raise the defense, as it is not personal to the garnishee.

Appeal from Galveston. Tried below before Hon. W. H. Stewart.

*Lovejoy, Sampson & Malevinsky,* for appellant.

*John C. Walker* and *Kleberg & Neethe,* for appellee.

GILL, ASSOCIATE JUSTICE.—On August 26, 1899, the American Radiator Company, a private corporation, brought this suit against W. F. Coakley for the sum of $1218.84, the value of materials furnished to Coakley by said company for the placing of a heating system in the John Sealy Hospital, of Galveston, Texas. Coakley was alleged to be the contractor who undertook the work, and a garnishment was sued out against John Sealy, Jr., on the 16th day of January, 1901, for the purpose of subjecting to the payment of the debt sued for any sum due to Coakley by Sealy on the contract. Paul J. Medley, the appellant, was also made a party defendant as asserting a prior right to the fund. The city of Galveston was made a party defendant as the owner of the building on which the work was done.

The J. L. Mott Iron Works intervened, alleging that it had furnished to the contractor, Coakley, goods to the value of $630.66 which were used in the repair of said building. That on the 14th of January, 1899, Coakley gave intervener an order on John Sealy, Jr., for the sum of $630.66, to be paid out of any sum owing by said Sealey to Coakley on the contracts. That the order was presented to Sealy and payment refused, though at the time of presentment Sealy had funds due and owing to Coakley sufficient to pay same. Judgment for the amount of the written order was asked against both Coakley and Sealy.

On March 25, 1901, Medley filed amended answer which, after a general denial, set up the fact that he had instituted suit against Coakley on July 15, 1898, for a debt of $807.98. That on December 31, 1898, he procured a writ of garnishment to be issued out of said cause and served on said Sealy. That in response to the writ Sealy had answered on the 17th of January, 1899, that he was indebted to Coakley

in the sum of $100, and fully setting up the facts, Sealy praying in his answer that the garnishment matter be postponed until he could file a more complete answer. That the County Court, before which the garnishment proceeding was pending, postponed the matter until the garnishee Sealy could answer disclosing more fully the facts. That on the 5th day of May, 1900, the garnishee did file an amended answer stating that he was indebted to Coakley in the sum of $1093.20, and that said proceeding is still pending in the County Court and is undisposed of. The prayer was that as all the parties claiming the fund were parties to this suit, that Medley have judgment against Sealy as garnishee for a sum sufficient to sati fy his claim against Coakley.

By supplemental petition and trial amendment the radiator company resisted the claims of Medley and the Mott Iron Works to the fund in the hands of Sealy, maintaining that nothing was due Coakley by Sealy at the date of service of Medley's writ of garnishment or at the time when the writ became functus officio, and that the sum now due by Sealy to Coakley accrued after the death of that writ. Replying to the intervention of the Mott Iron Works, plaintiffs set up that nothing was due by Sealy to Coakley at the date of the presentation of the order, and as the order was not accepted it did not attach to funds thereafter accruing to Coakley in the hands of Sealy.

Sealy answered stating fully the facts, giving the amounts in his hands due Coakley, setting up that he was a mere stakeholder having no interest in the fund, and asking protection as such. The pleadings are lengthy, and we have undertaken to give no more than a general outline of them. The real nature of the contest will more fully appear from the facts hereinafter stated.

A trial before the court without a jury resulted in a judgment in favor of Medley against Sealy for $120; in favor of Mott Iron Works against Coakley for the amount claimed by it, and against Sealy as garnishee for $308.20; in favor of the radiator company against Coakley for the amount claimed by it, and against Sealy for the sum of $665, who upon payment of the sums adjudged against him was to be discharged with his costs, and specifically protecting him against the further prosecution of the garnishment suit of Medley pending in the county court. The city of Galveston was discharged with its costs. From this judgment Medley alone has appealed.

The facts are as follows: The Sealy Hospital, a building which had been donated to the city of Galveston by John Sealy, Sr., deceased, was in the year 1898 found to be in need of certain repairs and improvements. For the purpose of making these, the heirs and legal representatives of John Sealy, Sr., donated certain funds and placed them in the hands of John Sealy, Jr., in trust for disbursement for the purpose named. The city of Galveston accepted the gift and assented that it should be used by the trustee as directed by the donors. The repairs and improvements contemplated were a new heating system and certain plumbing, sewerage, and gas fittings.

In pursuance of this arrangement John Sealy, Jr., on September 2, 1898, employed defendant Coakley to furnish the material and labor and to put ·in the new heating system, the price named in the written contract being $3760. The payments were to be made as the work progressed, 80 per cent of the value of the work ascertained by the architect to have been done to be paid every thirty days, the final payment to be made when the completed work was tested and proven satis‑ factory according to requirements and specifications.

On July 11, 1898, said Sealy, Jr., employed said Coakley to put into said building certain sewerage, plumbing, and gas fittings according to plans and specifications made a part of the written contract between them, the price agreed on for this work, including all labor and material necessary therefor, was $3573. On this contract three payments were to be made to Coakley during the progress of the work, and each payment to be made on the actual work executed, paying 75 per cent of such work, final payment to be made when the work was finished and accepted by the architects and owner.

Coakley entered upon . the execution of the work, buying from the radiator company the material for the price of which it sues, and from the Mott Iron Works the material for which the order for $630.66 was given, and the materials thus purchased from the parties named went into the construction of the proposed improvements.

Medley held a claim against Coakley which was entirely independent of the contracts with Sealy, the indebtedness to Medley having accrued prior thereto. On this claim Medley sued Coakley in the County Court as alleged, and ultimately procured judgment therefor. As ancillary to that suit he procured a writ of garnishment to be issued out of the County Court against John Sealy, Jr., as garnishee, which writ was served on the 31st day of December, 1898. The writ commanded Sealy to answer thereto on the 17th day of January, 1899. On the last named date Sealy, the garnishee, answered the writ, setting up his contracts with Coakley, stating that the work to be done was not completed, showing the time and method of payment as prescribed by the contracts, and stating that at the date of the service of the writ and of his answer he was indebted to Coakley in the sum of $100 and no more. The answer showed that he had paid Coakley on the heating contract $2940, and on the plumbing contract $2203.40. That if the contracts should be fully performed by Coakley there would be due him on the heating contract $820 and on the plumbing contract the sum of $1369.60. Garnishee prayed that, as he could not then ascertain what was due on the contracts, the work being then in progress, he be given until the full performance of the contract in which to file a fuller and more definite answer. The court so ordered.

On the 5th day of May, 1900, Sealy filed in the County Court his amended or supplemental answer to Medley's writ of garnishment, and, referring to his original answer therein, showed that since the filing of the original answer Coakley had failed to complete the work and

Sealy had procured it to be done through the bondsmen of Coakley. That upon the completion of the work he found himself owing to Coakley the sum of $308.20 on the plumbing contract and $785 on the heating contract, which sums include the amount admitted to be due in his original answer. This amended answer also suggested to the court the filing of the suit by the radiator company and asked that the proceedings be suspended until the disposition of the suit brought by the radiator company. The judge of the County Court on hearing the amended answer so ordered.

Medley at no time caused another writ of garnishment to be issued and served, nor did he contest either of the answers of the garnishee.

The radiator company's writ of garnishment was sued out on January 16, 1901, at a time when the work had been completed, and commanded Sealy to answer on the first Monday in February, 1901, which the garnishee accordingly did, setting up the facts as he did in his amended answer to Medley's writ.

On June 14, 1899, the Mott Iron Works served Sealy with notice that they held against him Coakley's written order for $630.66, but this was not accepted by Sealy. It was shown that the value of the work done by Coakley on the heating contract at the date of Sealy's original answer to Medley's writ was $3040, and there had been paid on same $2940.

Appellant contends: (1) That the garnishee having paid at the date of the answer only 80 per cent of the value of the work done on one contract, and 75 per cent on the other, the answer itself showed that he was indebted to Coakley in a greater sum than the amount of $100 at that date. (2) That as Coakley quit work as soon as the writ was issued, and the contract was completed by others, leaving a balance yet due on the contract price, such balance represents the amount which Coakley had actually earned and what had actually accrued to him at the date of the answer, and this is not affected by the fact that the sum thus accrued could not be ascertained until the completion of the work. (3) That he is entitled to the sum due at the date of the garnishee's answer, and because the entire sum had been ascertained and was due at the date of the filing of the amended answer in the County Court, the sum so ascertained and answered to be then due was affected by the writ, whether accrued on the return day of the writ or not. If either of these propositions is sound the judgment must be reversed.

Because the original answer of the garnishee to Medley's writ set up the two contracts and the method of payment prescribed therein, it is necessary to ascertain what effect an agreement to pay in installments has upon the ultimate rights of the parties. It seems to be fairly well settled that payments in installments, on a contract in its nature entire, amounts to no more than part payments on account of the entire sum, and are not an acceptance of the work pro tanto and a quittance of the contractor to that extent. Bartlett v. Bisby, this day decided by this court, and authorities therein cited. Should the contractor abandon

his conract before completion and the owner should necessarily expend more than the balance of the contract price, he may recover back from the contractor enough of the sums thus paid to make him whole. So the agreement in this case that a certain per cent of the value of the work should be paid in installments as the work progressed did not affect the entire and indivisible nature of the contract, and the answer setting up such provisions and the fact of such payments did not amount to an answer that the per cent of the value not covered by the payment had then accrued as a debt against the garnishee. The latter not only did not then owe the unpaid balance of the estimated values, but had certain interest in the sums already paid in the event the contract was abandoned and the owner had to finish the building.

This brings us to the second point made, which is nearly akin to the first, and which involves the question whether such a liability as that asserted against the garnishee is subject to garnishment. In order for a fund or liability to be subject to garnishment there must be no condition precedent, no impediment of any sort between the garnishee's liability and the defendant's right to be paid. The establishment of liability after garnishment is not sufficient. Waples on Att. and Gar., p. 197; 14 Am. and Eng. Enc. of Law, 2 ed., p. 765. On page 766 of the last cited authority it is stated in the text that money to become due on entire but uncompleted contracts is not subject to garnishment. To the same effect is Eikel v. Freilich, 1 White & W. C. C., sec. 1117; Blakenship v. Moore, 16 S. W. Rep., 780. Webber v. Bolte, 51 Michigan, 113, applies the doctrine to building contract in particular. See also Williams v. Railway, 36 Me., 201; Robinson v. Hall, 44 Mass., 301.

In McClellan v. Routh, 15 Texas Civil Appeals, 344, Justice Williams says: "According to many authorities a fund thus incumbered would not be subject to garnishment, but under the case of Carter v. Bush, 79 Texas, 31, and Mensing v. Engelke, 67 Texas, 537, it may be that if any balance remained in McClelland's hands after the building was completed and paid for, and the fund freed from all contingencies, the garnishment would hold it." The point was not up for decision, and the language implies a doubt. The fund mentioned had been placed in the hands of a third party to pay for the construction of a building, and the holder was garnished before its completion. The cases mentioned as possibly upholding the doctrine do not in our judgment sustain it. In Mensing v. Engelke, supra, the cotton in the garnishee's hands was held subject to the terms of the contract by which it was affected, and after the garnishee was reimbursed the surplus was held subject to the garnishment. In that case the actual cotton was charged with the quasi lien of the garnishment, and its subsequent sale to pay the claims of the garnishee was merely a means of ascertaining that a surplus of value actually existed at the date of the answer of the garnishee.

In Carter v. Bush, supra, a trustee named in a deed of trust for the benefit of creditors was served with a writ of garnishment for the pur-

pose of subjecting the surplus remaining after the secured debts had been paid. It was held in effect that if there was a surplus in value it existed at the time of the garnishment and was the property of the debtor at that time. The ultimate sale of the goods simply demonstrated the existence of the surplus at the time of the answer.

We are aware that authorities can be found to the contrary, but we can imagine no liability subject to more contingencies than the balance which may become due on an uncompleted building contract entire in its nature. We are therefore of the opinion that neither the answer of the garnishee nor the facts adduced in evidence disclosed that at the date of the original answer to Medley's writ any amount subject to garnishment was due or had accrued at that time except the $100 about which no question is made.

Of course when the building was completed by the direction of the garnishee, the sum then ascertained to be due was subject to garnishment, for it was then certainly due. But Medley had not procured a new writ, and the question arises, was the operation of the old writ extended by the request of the garnishee for time to file an amended answer? Coakley had obligated himself to Medley for his debt, but had given him no lien. Such lien as he had was a creation of the garnishment. Its operation could not be extended either as against Coakley or his creditors by any act of the garnishee. Drake on Attach., 3 ed., sec. 451b. It is well settled that a lessor owing rent as it accrues monthly can not be held by garnishment except for the rent earned at the date of his answer. Id., sec. 551.

When a garnishee is commanded to answer on a certain day he must answer on that day or subject himself to judgment by default. Hence it will be presumed that in all the decisions in which the date of the garnishee's answer is referred to it must be taken to have been made on the return day of the writ. To sustain the contention of appellant would empower the garnishee and the plaintiff in garnishment to extend the life of the writ by postponing the answer from time to time, thus gradually extending the quasi lien to funds which could not otherwise be reached by the writ. It is not the answer that fixes the lien, but the writ, for if the garnishee answer falsely and the answer is contested the writ will attach to the funds in his hands as disclosed by the result of the inquiry. We think it clear that the writ attaches to only such liability as had accrued at the date of service, or accrues between the service of the writ and the date named for the answer. We construe Bank v. Floeck, 17 Texas Civil Appeals, 418, as so holding. See also Drake on Attach., sec. 452.

Appellant further contends, however, that the defense is personal to the garnishee and can not be interposed by the other creditors of Coakley. Since appellant thus asserts a lien on funds upon which no lien exists, it is probable that Coakley himself could interpose it. But however this may be, we are clear that parties acquiring rights in the fund to which the lien has not attached can assert the defense. It would be

an extraordinary extension of the doctrine contended for to hold that. the garnishee, who has no concern in the matter and who is willing to· pay the fund to anyone the court may name as entitled to it, could by his silence defeat the rights of third parties who had acquired an interest in the fund.

Finding no error in the judgment, it is in all things affirmed.

*Affirmed..*

Writ of error refused.