COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-09-145-CV

 

 

IN THE
INTEREST OF T.M., D.M., JR., 

C.M. A/K/A S.M., AND D.M., CHILDREN                                                  

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant D.M. (Father) appeals the trial court=s order
that terminated his parental rights to four of his children.[2]  In seven points, he argues that the evidence
is legally and factually insufficient to support any statutory basis for
terminating his rights and that the trial court abused its discretion by
denying his motion for continuance.  We
affirm.








Background Facts

Father and T.M. (Mother) are the parents of the
children who are subject to this suitCT.M.,
D.M., Jr., C.M. a/k/a/ S.M., and D.M.[3]  Father moved to Pennsylvania in May 2007, and
in August 2007, he and Mother left the children with Mother=s cousin
(Cousin) in Texas.  Father said that he
was moving to Pennsylvania just for the summer to sell newspapers and that he
would come back to Texas Abefore school started.@  He occasionally called the children, but he
never visited them.  He sent the children
money Aa couple
of times.@

In December 2007, because Cousin could not
adequately meet the children=s needs,
they went to stay with Father=s mother
(Grandmother). Grandmother began to have financial and marital problems, and in
June 2008, she brought the children to the Department of Family and Protective
Services (the Department) because she believed that she could not care for them
any longer.








After Grandmother gave the children to the
Department, it filed its original petition; at that time, the children=s ages
ranged from three to eight.  In the
original petition and in an amended petition, the Department alleged that it
had made reasonable efforts to reunify the children with Father and that Father
had constructively abandoned the children. 
Thus, the Department asked the trial court to terminate Father=s rights
if reunification could not be achieved. 
An affidavit attached to the Department=s
original petition detailed Father=s
failure to return from Pennsylvania despite his representations that he would
do so and his failure to leave proper medical documents about the
children.  The trial court entered an
order naming the Department as the children=s temporary
sole managing conservator.

In July 2008, the Department filed its initial
service plans (including a separate plan for each of the children and a
comprehensive AFamily Service Plan@).  The service plans explained that the
Department=s goal remained to be
reunification but that the children had basic needs including food, shelter,
supervision, routine medical care, and a safe home environment.  The initial and subsequent service plans
asked Father to, among other tasks, demonstrate responsibility in parenting,
visit the children as much as possible, complete a psychological evaluation,
and participate in drug assessments, random drug tests, and parenting classes.[4]  








The Department scheduled a family group
conference for July 31, 2008, and it told Father that it would pay for his bus
ticket to Texas to attend the conference and visit the children.  However, Father did not attend the
conference; instead, he participated in the conference by telephone.  During the conference call, Father expressed
anger toward the Department and his family, and he was Avulgar,
very confrontational, [and] not cooperative at all.  [The conference facilitator] had to actually
take him off of speakerphone a couple of times.@

In November 2008, the Department opined that
Father had Aessentially abandoned@ his
children by moving to Pennsylvania and by failing to move back to Texas or
visit his children despite the Department=s
requests that he do so. A progress report filed by the Department indicated
that in November 2008, the children had minimal phone contact with Father but
that his phone number was frequently disconnected and that he did not maintain
contact with the Department.  By that
time, the children had expressed that they did not wish to leave their foster
home.








In January 2009, after the trial court granted
Father=s and
Mother=s
motions for continuance of the termination trial, the trial court entered an
order that required Father to complete several tasks by specified dates (such
as taking drug tests and participating in parenting classes) and that
designated April 27 as the new trial date. 
The Department=s goal changed from
reunification with Father and Mother to permanently placing the children with
another family through adoption. 

Father never completed any of the services
requested by the Department.[5]  Despite the Department=s
telling him that he needed to see his children and Father=s
multiple statements in 2008 and 2009 to the Department and to the children that
he was going to move back to Texas, Father never saw the children after moving
to Pennsylvania in 2007.[6]  Meanwhile, the children lived with a loving
foster motherCwho planned to adopt themCin a
home with a safe and stable environment.

In April 2009, the trial court entered an order
that terminated the parents= rights
to the children on multiple grounds, including constructive abandonment.[7]
Father filed his notice of this appeal.








Evidentiary Sufficiency

In his first six points, Father contends that the
evidence is insufficient to support a statutory basis for terminating his
rights to the children.  Specifically, in
his third and fourth points, he asserts that the evidence is legally and
factually insufficient to show that he constructively abandoned the children
under section 161.001(1)(N) of the family code. 
See Tex. Fam. Code Ann. ' 161.001(1)(N)
(Vernon Supp. 2009).

Standard of review and applicable law

A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002). 








In a termination case, the State seeks not just
to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.[8]  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Termination decisions must be supported by
clear and convincing evidence.  Tex. Fam.
Code Ann. '' 161.001, 161.206(a).  Evidence is clear and convincing if it Awill
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.@ Id.
' 101.007
(Vernon 2008).  








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment. Id.  In
reviewing the evidence for factual sufficiency, we must give due deference to
the factfinder=s findings and not
supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006). 
We must determine whether, on the entire record, a factfinder could
reasonably form a firm conviction or belief that Father violated section
161.001(1)(N).  See C.H., 89
S.W.3d at 25, 28B29.

A trial court may terminate a parent=s rights
to a child on the ground of constructive abandonment if it finds by clear and
convincing evidence that (1) the child has been in the permanent or
temporary managing conservatorship of the State or an authorized agency for not
less than six months, (2) the State or the authorized agency has made
reasonable efforts to return the child to the parent, (3) the parent has not
regularly visited or maintained significant contact with the child, and (4) the
parent has demonstrated an inability to provide the child with a safe
environment.  See Tex. Fam. Code
Ann. ' 161.001(1)(N);
In re M.R.J.M., 280 S.W.3d 494, 505 (Tex. App.CFort
Worth 2009, no pet.) (op. on reh=g); In
re J.J.O., 131 S.W.3d 618, 628 (Tex. App.CFort
Worth 2004, no pet.); In re K.M.B., 91 S.W.3d 18, 25 (Tex. App.CFort
Worth 2002, no pet.).  








Analysis

Father asserts that the evidence is
insufficient to prove that he did not maintain significant contact with the
children or that he demonstrated an inability to provide them with a safe
environment.  He does not dispute that
the Department had conservatorship of the children for at least six months or
that the Department made reasonable efforts to return the children to him.

The evidence conclusively establishes that Father
did not see the children for almost two years preceding the trial.  Although Father asserts that face to face
visits were Aimpracticable@ and the
evidence establishes that Father talked to the children some on the telephone,[9]
the evidence also shows that the frequency of his communication with them was
sporadic and that the quality of his communication with them was anything but
significant; it was misleading and counterproductive.  See J.J.O., 131 S.W.3d at 628B29
(analyzing both the quantity and quality of a mother=s visits
in a constructive abandonment analysis). 









For instance, in the winter of 2007 and spring of
2008, Father did not communicate with the children in any way.  In the latter part of 2008 and in the early
part of 2009, he called the children periodically,[10]
but according to a report by Court Appointed Special Advocates (CASA), the
children Aspoke of the calls in a blasé
tone and seemed to shrug them off.@ 

During the phone calls, Father promised the
children that he would visit them and that he would move back to Texas.  Father last spoke with the children on
February 16, 2009, more than two months before the termination trial.  The children=s behavior
at school improved after Father=s last
phone call.








Father relies on In re K.W. to propose
that regular contact between a parent and a Department caseworker negates a
claim of constructive abandonment.  138
S.W.3d 420, 432 (Tex. App.CFort
Worth 2004, pet. denied).  But our
opinion in K.W. does not contain any statement directly adopting that
holding.  See id.  Also, in K.W., we were reviewing
termination of the parental rights of a father who had been incarcerated for
the entire time that the termination suit was pending and whose contact options
with his child were therefore necessarily limited.  See id. at 423.  Here, there is no evidence that Father=s
opportunities to visit the children were similarly limited; instead, the
evidence indicated that Father rejected a trip to Texas to visit the children
at the Department=s expense.  

We conclude that a factfinder could reasonably
form a firm belief or conviction that Father did not maintain significant
contact with the children, and we therefore hold that the evidence detailed
above is legally and factually sufficient in that regard.  See Tex. Fam. Code Ann. ' 161.001(1)(N)(ii);
J.P.B., 180 S.W.3d at 573; C.H., 89 S.W.3d at 25, 28B29; M.R.J.M.,
280 S.W.3d at 505B06 (holding that there was no
significant contact with a child although the parent visited and wrote letters
to the child); J.J.O., 131 S.W.3d at 628B29
(holding that the evidence was legally and factually sufficient to show that
the mother did not maintain significant contact although she visited her child
twelve times during a nine-month service plan); In re H.R., 87 S.W.3d
691, 699 (Tex. App.CSan Antonio 2002, no pet.)
(holding that the evidence was legally sufficient on constructive abandonment
although the mother intermittently visited her child). 








Next, Father contends that the evidence is
legally and factually insufficient to show that he demonstrated an inability to
provide the children with a safe environment. 
He argues, AThere is no evidence concerning
[his] present residence.  Further, the
children resided with Appellant in the past, and there is no indication that
Appellant failed to provide a safe environment during those periods.@

However, the record does not contain any
indication that Father wanted the children to live with him in Pennsylvania;
instead, Father=s acts show the opposite.  The Department tried to complete a home study
to see if the children could live with Father in Pennsylvania, but Father never
returned numerous phone calls or a letter related to the study.  Father=s acts
also show that he did not have any legitimate plan to live with the children
elsewhere; he lied on several occasions about moving back to Texas.

Father failed to complete any parts of the
service plans despite being ordered to do so by the trial court and being
advised orally and in writing that completion of the plans was important to
help address the circumstances that led to the Department having custody of the
children and to show the Department that he could care for the children.  The record does not contain evidence of any
attempt by Father to find a place for the children to live or someone to
provide for their needs after Grandmother took them to the Department in June
2008.  The record also does not show that
Father gave the children=s foster mother money to assist
her in caring for the children or otherwise supported the children in any way
from Grandmother=s delivery of the children to
the Department until the trial in April 2009. 









Thus, the evidence establishes Father=s
inability to provide the children with any environment (in Pennsylvania
or in Texas) much less a safe environment, and the evidence is therefore
legally and factually sufficient as to the Asafe
environment@ element of constructive
abandonment.  See Tex. Fam. Code
Ann. ' 161.001(1)(N)(iii);
M.C. v. Tex. Dep=t of Family and Protective
Servs., No. 08‑08‑00053‑CV, 2009 WL 3450987, at *3 (Tex.
App.CEl Paso
Oct. 28, 2009, pet. denied) (holding that evidence was sufficient to show that
a mother could not provide a child with a safe environment when the mother,
among other things, did not provide for the child=s
necessities and had no permanent housing in which the child could reside with
her). 








Because we hold that the evidence is legally and
factually sufficient to support the constructive abandonment ground for
terminating Father=s rights, we overrule Father=s third
and fourth points.  We will not address
Father=s first,
second, fifth, and sixth points, which relate to the sufficiency of the
evidence to support alternative statutory grounds for termination.  See Tex. R. App. P. 47.1; In re
E.M.N., 221 S.W.3d 815, 821 (Tex. App.CFort
Worth 2007, no pet.) (explaining that along with a best interest finding, a
finding of only one ground alleged under section 161.001(1) is sufficient to
support a judgment of termination); In re B.K.D., 131 S.W.3d 10, 16
(Tex. App.CFort Worth 2003, pet. denied)
(explaining that Ato be successful on appeal, the
appellant must establish that the . . . findings on all of the [Department=s] pleaded
grounds are unsupported by the evidence@). 

Denial of Father=s Motion
for Continuance

In his seventh point, Father argues that the
trial court erred by denying the motion for continuance that he filed on the
day of trial.  Father=s motion
asserted that he believed that trial had been reset for April 30 because he
received notice of a permanency hearing set for that day.  The trial court denied Father=s
motion, and the parties presented their cases without Father=s or
Mother=s
attendance at trial.

We review a trial court=s ruling
on a motion for continuance for an abuse of discretion.  See BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 800 (Tex. 2002); In re Z.C., 280 S.W.3d
470, 478 (Tex. App.CFort Worth 2009, pet.
denied).  We do not substitute our
judgment for that of the trial court. In re Nitla S.A. de C.V., 92
S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). 
Instead, we must determine whether the trial court=s action
was so arbitrary and unreasonable as to amount to a clear and prejudicial error
of law.  Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial
court acted without reference to guiding rules or principles.  Cire v. Cummings, 134 S.W.3d
835, 838B39 (Tex.
2004). 








The absence of a party to a proceeding is not an
adequate ground for a continuance unless the party shows that it had a
reasonable excuse for not being present and that its absence resulted in
prejudice.  Erback v. Donald, 170
S.W.2d 289, 291B92 (Tex. Civ. App.CFort
Worth 1943, writ ref=d w.o.m.); see Tex. R.
App. P. 44.1(a); Commercial Standard Ins. Co. v. Merit Clothing Co., 377
S.W.2d 179, 181 (Tex. 1964) (holding that the trial court did not abuse its
discretion by overruling a motion for continuance because, in part, the record
did not reflect any harm); Ngo v. Ngo, 133 S.W.3d 688, 693 (Tex. App.CCorpus
Christi 2003, no pet.); Richards v. Schion, 969 S.W.2d 131, 132 (Tex.
App.CHouston
[1st Dist.] 1998, no pet.).  When the
movant seeks a continuance because of an absent witness, it must show the
materiality of the absent witness=s testimony.  Tex. R. Civ. P. 252; Fountain v.
Knebel, 45 S.W.3d 736, 739 (Tex. App.CDallas
2001, no pet.); Humphrey v. Ahlschlager, 778 S.W.2d 480, 483 (Tex. App.CDallas
1989, no writ). 








The entirety of Father=s motion
for continuance at trial and the majority of Father=s
argument in his brief on his seventh point concerns the reason why he was
absent from trial.  But under the
authority cited above, even if his absence was reasonable, he must show
prejudice, and his brief only concisely concludes, A[Father]
could not assist his attorney in questioning [the Department=s]
witnesses, and [Father] could not provide his own testimony.@ Father
did not show by affidavit (or otherwise) at trial and has not shown on appeal
that he would have testified to facts that are contrary to or that are
mitigating from the testimony offered by the Department=s sole
witness.  He also has not explained how,
beyond offering his own testimony, his presence at trial would have potentially
changed the trial court=s termination decision. Thus,
under the standards described above, because Father has not demonstrated that
his absence and the denial of his continuance motion resulted in prejudice, we
overrule his seventh point.  

Conclusion 

Having overruled all of Father=s
dispositive points, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

 

DELIVERED:  December 31, 2009

 











[1]See Tex. R. App. P. 47.4.





[2]To protect the privacy of the
parties involved in this appeal, we identify them by initials only.  See Tex. R. App. P. 9.8(b); Tex. Fam. Code
Ann. ' 109.002(d) (Vernon 2008). 





[3]Father has another child
who is not involved in this appeal.





[4]The record indicates that
Mother has abused drugs, but it does not show Father=s drug history.  The Department identified a location in
Pennsylvania that could provide parenting classes.





[5]Father took a
pyschological evaluation but did not sign a release to allow the Department to
view the results of the evaluation despite the Department=s several requests that
he do so.





[6]The Department=s caseworker testified
that Father Aemotionally manipulated@ the children by falsely
telling them that he would come home for Christmas and that he would send them
Christmas and birthday presents.





[7]The termination of Mother=s parental rights is not
at issue in this appeal. 





[8]Father does not argue
that termination of his rights was not in the children=s best interests.





[9]Father has not cited any
cases in which a court held that a parent who had the ability to visit a child
but did not make any visits nonetheless maintained significant contact with the
child.





[10]Father called the
children twenty to twenty-five times during the course of the Department=s case, which lasted for
more than ten months.  The children=s attorney ad litem told
the trial court that Father=s calls and false promises to the children made
them Acry week after week after
week.@